UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Royal Pet Incorporated,                                          Civil No. 05-825 (DWF/SRN)

            Plaintiff,

v.                                                                **MEMORANDUM
                                                                 OPINION AND ORDER**

Timothy Edwards and
Mary Edwards,

            Defendants.

_____

Peter J. Ims, Esq., and Z. Peter Sawicki, Esq., Westman Champlin & Kelly, counsel for Plaintiff.

Michael A. DiNardo, Esq., Kelly Lowry & Kelley, LLP; and Keith J. Broady, Esq., Abdo Abdo Broady & Satorius, PA, counsel for Defendants.
_____

**Introduction**

The above-entitled matter came before the undersigned United States District Judge on August 12, 2005, pursuant to a Motion to Dismiss brought by Timothy Edwards and Mary Edwards (collectively, "Defendants"). In its Complaint for Declaratory Judgment (the "Complaint"), Plaintiff Royal Pet Incorporated ("Royal Pet") asserts five counts, requesting declaratory judgment that: (1) U.S. Patent No. D498,955 (the "'955 Patent") is invalid; (2) the '955 Patent is unenforceable; (3) Royal Pet's "Bags To Go" product does not infringe the '955 Patent; (4) the "Bags To Go" product does not infringe U.S. Patent No. 6,076,717 (the "'717 Patent"); and (5) the '717 Patent is invalid. For the reasons set forth below, Defendants' Motion to Dismiss is granted.

**Background**

Royal Pet and Defendants operate competing businesses that provide supplies for domestic pets. Royal Pet is a corporation with its principal place of business in Eagan, Minnesota. Defendants are residents of California. They own a company called The Martim Group, Inc., that is not a party to this action. The Martim Group, Inc.'s principal place of business is located in California, and Defendants reside in Del Mar, California. Although Defendants assert that the company does business throughout the United States, including the State of Minnesota, Defendants have both set forth declarations stating that they have no personal contacts with Minnesota, they have no employees or facilities in Minnesota, and they have never attended any conferences or trade shows in Minnesota. (Declaration of Timothy Edwards in Support of Motion to Dismiss at ¶¶ 4-6; Declaration of Mary Edwards in Support of Motion to Dismiss at ¶¶ 3-5.)

The causes of action asserted by Royal Pet are brought pursuant to the U.S. Declaratory Judgment Act, 28 U.S.C. §§ 1391(b) and 1400(b). Royal Pet asserts that an actual controversy exists as to Royal Pet's alleged infringement of the '955 and '717 Patents. These Patents are entitled "Bag Dispenser for Pet Refuse" and "Pet Refuse Bag Dispenser Attachable to a Leash or Collar," respectively. Royal Pet further contends that this Court has personal jurisdiction over Defendants because Defendants transact business in Minnesota and because Defendants have accused Royal Pet of infringement by mailing a cease and desist letter to Royal Pet within the State of Minnesota.

In that letter to Royal Pet, dated March 31, 2005, Defendants' counsel stated:

> This firm represents Timothy and Mary Edwards in connection with their Patent and related intellectual property matters. Timothy and Mary Edwards are

2

> the owners of the above-identified U.S. Patents. We have enclosed copies for your review.
>
> It has recently come to our attention that your company may be manufacturing products falling within the scope of one or more claims of the above-entitled patents. Specifically, the design of your Bags To Go bone-shaped product appears to be identical to the design shown in U.S. Patent No. D498,955.
>
> Please review the enclosures which show the exclusive rights granted by the United States Government to Timothy and Mary Edwards. If you do not believe that the products manufactured and/or sold by Royal Pet fall within the scope of any of the claims of the issued patents, we look forward to receiving your response with reasons supporting such a position. If, on the other hand, you believe an infringement problem may exist, you may begin immediately to take steps to cease the manufacturing and/or sale of such infringing products.

(Complaint, Ex. C (the "March 31, 2005 Letter").) Royal Pet contends that, based upon the prior litigation between the parties, the competitive relationship between the parties, and Defendants "demand" that Royal Pet cease production of the "Bags To Go" dispenser, Royal Pet "has a reasonable apprehension of [sic] that it will face a patent infringement lawsuit." (Complaint at ¶ 14.)

The "prior litigation" referred to in the Complaint relates to litigation that ensued after Defendants sent a cease and desist letter to Royal Pet dated June 11, 2002. In that letter, Defendants stated:

> It has recently come to our attention that your company may be manufacturing products falling within the scope of one or more claims of Patent No. 6,076,717. More particularly, it is our understanding that your "Bags to Go" product is being manufactured and intended to be displayed at the APPMA Annual Pet Products Trade Show in Chicago, Illinois, June 12-14, 2002.
>
> Our client demands that you immediately cease production and advertisement of the "Bags to Go" product, and any other product falling within the scope of U.S. Patent No. 6,076,717.
>
> We enclose a copy of a Complaint which we have been advised to file if your company displays and offers to sell the "Bags to Go" product at the APPMA Trade Show, or any other marketing or distributing medium. A review of the

3

> Complaint shows that the Edwards will seek to preliminarily and permanently enjoin your company from infringing, or inducing others to infringe, U.S. Patent No. 6,076,717.  Also, due to the fact that you have been forewarned about your infringing activities, the Edwards will be seeking damages in an amount equal to three times the amount of damages found or assessed due to your deliberate acts of infringement, as well as their costs and attorneys fees.

(Complaint at Ex. A (the "June 11, 2002 Letter").)  Upon receiving this letter and its accompanying Complaint, Royal Pet filed a Complaint with this Court seeking declaratory relief that Royal Pet had not infringed the '717 Patent and that the '717 Patent was invalid.  (*Id.* at Ex. B.)  After the Complaint was served, the parties entered into a settlement agreement that allowed Royal Pet to continue producing and selling the products at issue.  (*Id.* at ¶ 11.) It is undisputed that the parties have had no other litigious contacts aside from these two letters and the 2002 litigation.

Defendants' Motion to Dismiss asserts that neither personal nor subject matter jurisdiction exists over this action.

## Discussion

### I.   Subject Matter Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

> In a case of actual controversy within its jurisdiction, . . .  any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Thus, an actual controversy is required before a declaratory judgment action is ripe for adjudication.  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)).  In order to demonstrate that an actual controversy exists, the plaintiff bears the burden of establishing, by a preponderance of the

evidence, that it has a reasonable apprehension that it will be sued. *Id.* The Court employs a two-pronged test to determine whether an actual controversy exists:

> First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or prepared to produce that device.

*Id*. at 887 n.2 (citing *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987)). The Court looks to whether there are any express charges of infringement and, if none exist, the Court considers the "totality of the circumstances" to determine whether the defendants' conduct rose to "a level sufficient to indicate an intent to enforce [their] patent." *Id.* at 888 (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).

Defendants contend that there is no actual controversy between the parties within the meaning of the Declaratory Judgment Act because Plaintiffs had no reasonable apprehension that they would be sued. Plaintiffs, on the other hand, assert that the March 31, 2005 Letter, taken in context with the June 11, 2002 Letter and subsequent litigation, created reasonable apprehension on the part of Royal Pet that it would be sued for patent infringement.

The March 31, 2005 Letter did not involve an express claim of infringement. Thus, the Court looks to the totality of the circumstances to determine if an actual controversy exists. *Shell Oil Co*., 970 F.2d at 888. Viewing the March 31, 2005 Letter objectively, the Court finds that the letter did not subject Royal Pet to a reasonable apprehension that it would be sued for patent infringement. Contrary to Royal Pet's assertions, the letter did not demand that Royal Pet cease manufacturing and sale of its "Bags To Go" dispensers. Instead, the letter suggested that Royal Pet "may be manufacturing products falling within the scope" of the '955 and '717

5

Patents, it urged Royal Pet to determine whether their products fell within the scope of the Patents, and it requested that Royal Pet respond with reasons supporting its position. In the Court's perspective, if this letter alone constituted a reasonable threat of suit, a company would be unable to make any contact whatsoever with a potentially infringing party without being haled into court under the Declaratory Judgment Act.

Further, Royal Pet has provided the Court with no case law supporting its position that the Court should look to the June 11, 2002 Letter and ensuing litigation to support Royal Pet's assertion of a reasonable apprehension of suit. Nonetheless, considering the 2002 Letter and litigation as part of the totality of circumstances, the Court finds that the June 11, 2002 Letter undermines Royal Pet's position. The June 11, 2002 Letter demonstrates that Defendants were fully capable of preparing a cease and desist letter that strongly threatened litigation when Defendants wanted to do so. The June 11, 2002 Letter accused Royal Pet of infringing, it demanded that Royal Pet cease production of its allegedly infringing products, and it included a complaint that Defendants threatened to file if Royal Pet continued to offer its products. Although the June 11, 2002 Letter would have given Royal Pet a reasonable apprehension that it would be sued for patent infringement in 2002, the existence of the strongly-worded June 11, 2002 Letter, accompanied by an unfiled complaint, logically would have led Royal Pet to the opposite conclusion when it received the March 31, 2005 Letter. Considering the totality of the circumstances, the Court finds that Royal Pet did not objectively have a reasonable apprehension that it would be sued for patent infringement in 2005. In the absence of a reasonable apprehension of suit, there is no actual case or controversy, and Defendants' Motion to Dismiss for lack of subject matter jurisdiction is granted.

## II.     Personal Jurisdiction

Defendants also assert that they lack sufficient contacts with Minnesota to establish either general or specific jurisdiction.  The Court agrees.

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists.  *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  *Digi-Tel Holdings, Inc. v. Protec Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; the court may inquire, by affidavits or otherwise, into the facts as they exist. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc*., 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process.  *Digi-Tel*, 89 F.3d at 522 (citing *Northrup King*, 51 F.3d at 1387).  However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied.  *Wessels, Arnold & Handerson v. National Med. Waste, Inc.*, 65 F.3d 1427,

1431 (8th Cir. 1995). Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's contacts must be more than "random," "fortuitous," or "attenuated." *Digi-tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475). Instead, the contacts must result from the actions of the defendant itself to create a "substantial connection" with the forum state. *Id.*; *see also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223) (1957)).

In accordance with the basic principles of federal due process, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those

contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minnesota Mining and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

The third factor distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523, n.4 (citing *Wessels*, 65 F.3d at 1432, n.4). Constitutional law distinguishes between "general" and "specific" jurisdiction cases. *Valspar*, 495 N.W.2d at 411. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418-19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction requires that a defendant has "purposely directed" its activities at residents of the forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Royal Pet has not alleged that the Defendants themselves have such continuous and systematic contacts to support general jurisdiction over the Defendants. Rather, Royal Pet asserts that the basis for personal jurisdiction over Defendants is the letter sent to Royal Pet in Minnesota, and that the Martim Group has sufficient contacts with Minnesota by selling products in the state. First, the Court finds that the March 31, 2005 Letter is not sufficient to confer specific jurisdiction over Defendants. Second, the Court finds no merit to Royal Pet's arguments that jurisdiction is established based on the Martim Group's contacts with Minnesota. Royal Pet has not brought suit against the Martim Group. Nor has Royal Pet set forth any allegations to support its contention that Defendants are attempting to use their corporation as a

9

shield against a finding of personal jurisdiction in Minnesota. Finally, there is no legal support for Royal Pet's assertion that Defendants waived their right to challenge personal jurisdiction because they did not raise the issue in 2002. For these reasons, the Court finds that Defendants' Motion to Dismiss for lack of personal jurisdiction is appropriately granted.

Because the Court has granted Defendants' Motion to Dismiss on two separate grounds, the Court need not address Defendants' assertions regarding venue.

For the reasons stated, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss (Doc. No. 4) is **GRANTED**.

2. The Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 20, 2005            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court